## CHANFRAU v. ALEXANDER et al.

### (Circuit Court, E. D. Pennsylvania. March 30, 1911.)

### No. 355.

1. TRUSTS (§ 56*)—CREATION—UNDUE INFLUENCE.

In a suit to set aside a trust deed, evidence *held* insufficient to show that the creator of the trust was cajoled, deceived, or in any manner compelled to execute the same, but, on the contrary, to establish that it was freely and voluntarily executed.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 56.*]

2. TRUSTS (§ 56*)—VOLUNTARY CREATION—REPUDIATION.

Complainant, a minor of bad habits, extravagant in disposition, and addicted to drink and other vices, being about to attain his majority and receive a considerable inheritance, proceedings were instituted against him to have him declared an habitual drunkard. These proceedings were sought to be dismissed on the minor's agreeing to create an irrevocable trust of the major portion of his inheritance; but the court declined, because it did not appear that complainant had received competent independent advice, etc., after which a rehearing was applied for, and the trust created pursuant to other proceedings with complainant's consent, after he had been fully advised by capable and trustworthy counsel. *Held*, that the trust, having been created by his voluntary act, would not be set aside merely because complainant thereafter repented his act.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 76; Dec. Dig. § 56.*]

In Equity. Suit by Henry F. Chanfrau against Benjamin Alexander and others. On final hearing. Bill dismissed.

Joseph Levy and Bernard F. Owens, for complainant.

George Henderson, for respondents.

J. B. McPHERSON, District Judge. I have read this long record with attention, and think there can be little doubt about the essential facts that are disclosed. A minor of bad habits, extravagant in disposition, addicted to drink, among other vices, was about to attain his majority, at which date a considerable inheritance awaited him. Fearing the probable result, his wife and his grandmother applied to the common pleas court of Philadelphia county to have him declared an habitual drunkard, and the preliminary steps in this proceeding were taken. Conferences followed between himself, his nearest relatives, and an attorney, who represented the family interests and was then acting in part for the minor also. These conferences resulted in a petition to withdraw the proceedings, upon the ground that he had—

"* * * agreed, if the above-mentioned proceedings are discontinued, to place the said Baltimore avenue property, and the sum of forty-three thousand dollars ($43,000) in cash in an irrevocable trust, the balance of the cash of his estate aforesaid being retained from said trust to enable him to clear up certain obligations."

The judge of the court gave the whole subject careful consideration and disapproved of the proposed settlement, saying, inter alia:

"We are of opinion that under the circumstances we cannot sanction the settlement, either directly or indirectly. A young man of 21, married, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

having or reasonably expecting children, ought not to be tied up for life without giving him a chance to overcome the vice or infirmity which is alleged against him. If he were thoroughly cured, this settlement could not be sanctioned by us. There is no evidence that he has had independent advice from counsel other than the trustee's counsel. Indeed, there is room for the apprehension that the proceedings themselves have had some influence in causing him to agree to the settlement. Nothing is plainer than the proposition that under such circumstances any settlement that is to be made should be the result of the free and unrestricted action of the settlor, that he should have competent and independent advice, and that the terms should be fair and equitable and consonant with the general policy of the law."

For these reasons, he refused permission to withdraw the proceedings. Thereupon a rehearing was asked for, and the minor joined in the request. The petition for rehearing stated, inter alia:

" * * * That thereafter, on July 8th, your honorable court refused said petition and filed an opinion.

"That since that time the said respondent, in accordance with the suggestion contained in said opinion, has retained as his independent adviser Abraham M. Beitler, Esq., with whom he has been and is still consulting, looking toward an amicable ending of the aforementioned proceeding.

"That, while it is still deemed desirable by all the parties that the estate coming to the said Henry F. Chanfrau shall be conveyed to trustees, yet petitioners are desirous that the deed of trust shall be modified in such manner as to meet the views of counsel for the said Henry F. Chanfrau, and to concur fully with the opinion of this court heretofore filed."

To which the minor assented, saying:

"Henry F. Chanfrau, having read the foregoing petition, joins in the prayer thereof, stating to the court that he is desirous that a trust shall be created which will protect him and his wife and any children who may be born to him and her, and his grandmother and aunt, to whom he is under obligations, and who have stood since his birth in loco parentis; that he expects to submit a form of deed, and will gladly avail himself of any suggestion made by the court with regard to any modification thereof."

Shortly afterwards, having followed the court's suggestion and having employed and consulted with independent counsel—formerly a judge in the state courts, and now a distinguished member of the bar —he submitted a new deed of trust. This was the result of numerous interviews and much further consideration, and was fully explained to him before its execution. He agreed to all its terms, but the care with which his interest was guarded is further shown by the fact that the petition for rehearing came before the court in the presence of the minor himself, with his counsel, when the judge examined him concerning the proposed trust, and only after such examination made the following order:

"And now, to wit, 1st October, 1908, upon presentation of the petition of Blanche H. Chanfrau and Henrietta E. Chanfrau (and the joinder therein of Henry F. Chanfrau) praying the court to make an order granting a rehearing of the petition filed on the 6th day of July, 1908, and praying that they be permitted to withdraw the petition theretofore filed, and that the same should be marked ended of record, and upon hearing counsel for the petitioners and Abraham M. Beitler, Esq., counsel for Henry F. Chanfrau, and the said Henry F. Chanfrau in person, the court being satisfied that the best interests of the said Henry F. Chanfrau will be served by permitting the withdrawal of the petition and the abandonment of the proceedings against him, and by the execution of the deed of trust, which will secure him the income from $43,-000 of the corpus of his estate (the balance being applied to the payment of

sundry debts owing and expenses incurred in this court), orders and decrees that the rehearing be granted, and that the prayer of the petition filed on the 6th day of July, 1908, be granted, and that upon payment of the master's fee and the costs incurred by him, and of the prothonotary's costs in this case, the petition be marked 'Withdrawn by Leave of the Court.' "

The trust thus created is being carried out, and, so far as appears, without any reasonable ground for complaint. The minor has never had any regular, and very little occasional, occupation, and it is clear from his testimony that he is making little, if any, effort to secure employment of any kind. But he now finds the restrictions of the trust to be burdensome, and is trying to set it aside on the ground that he was cajoled, deceived, or compelled to execute it, and did not exercise his free and voluntary will. If this averment is not true, he has no case; and I have no hesitation in finding as a fact that it is not true. The evidence satisfies me beyond any reasonable doubt that he and those properly dependent upon him needed protection from himself in 1908, and that he was fortunately conscious of such need at that time. He knew fully what he was doing when he entered into the arrangement; he was advised completely by thoroughly capable and trustworthy counsel; no one compelled him or cajoled him, or deceived him; the common pleas court of Philadelphia county examined him in open court upon the subject, and was satisfied with the settlement. In short, the evidence is overwhelming that the step he then took was his voluntary act, free from fraud or coercion or undue influence in any respect. It is no ground for setting aside a trust made under such circumstances that he dislikes it now and is sorry that he ever agreed to it. Upon the facts, I think it is still a desirable arrangement; but I do not put my ruling on this consideration, but solely on the proposition that the irrevocable trust created in 1908 was his free and voluntary act, and that no legal ground for setting it aside has been shown. The cases cited on his behalf rest upon widely different facts, and do not apply where the evidence shows clearly, as it shows here, that the transaction was fair throughout, that the settlor was acting under the advice of independent and competent and disinterested counsel, and was neither deceived nor unduly persuaded nor coerced. It may not be improper to add that the wide discretion granted to the trustees with regard to the payment and employment of the principal is ample to provide for any reasonable demand that may be made upon it in his behalf, and that, if he shows himself worthy of confidence, there is ample power, and I am sure there will also be complete readiness, on the part of the trustees to comply with his reasonable wishes in every proper direction.

A decree may be entered dismissing the bill.